Argued January 25; reversed January 31, 1933

## MORRISON *v.* CLACKAMAS COUNTY
(18 P. (2d) 814)

*Verne Dusenbery,* of Portland (Crum & Dusenbery, of Portland; on the brief), for appellant.

*Fred A. Miller,* of Oregon City, for respondent.

BEAN, J. The facts alleged in the complaint show that the property of plaintiff was, by reason of the construction of the jetty by the county, subjected to the destruction alleged for a public use, namely, to protect the county highway and the county bridge, without just compensation. We think the use or destruction of the property amounted to a taking for public use within the meaning of article I, section 18 of the constitution of Oregon. The action of the county constituted a taking within the meaning of the constitution just as much as if the county had taken the dirt or soil which was washed away from plaintiff's land and used it for widening the highway which was intended to be benefited by the construction of the jetty. The county is bound by the natural consequence of its acts, whether the result was contemplated or not.

Section 18 of our organic law provides as follows: "Private property shall not be taken for public use,

\* \* \* without just compensation; \* \* \* the use of all roads, ways and waterways \* \* \* or water for beneficial use or drainage \* \* \* is declared a public use."

Article I, section 10 of the Constitution, ordains that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

In *Smith v. Cameron*, 123 Or. 501 (262 P. 946), it is said the term "waterways" used in article I, section 18 of the Constitution of Oregon, is synonymous with "watercourses," either natural or artificial.

Section 37-305, Oregon Code 1930, provides that "Every county of the state of Oregon is hereby authorized and empowered to condemn, acquire and appropriate any land or property, \* \* \* or to protect the roads, highways, bridges or other public property from overflow by floods or freshets; \* \* \*." Section 37-307 directs that "compensation for the property, \* \* \* and the damages for the taking thereof shall be paid from funds of said county \* \* \*."

■ According to the more modern authorities, any destruction, restriction or interruption of the common and necessary use and enjoyment of the property of a person for a public purpose constitutes a "taking" thereof. *Kurtz v. Southern Pac. Co.*, 80 Or. 213 (155 P. 367, 156 P. 794) ; *Mosier v. O. W. R. & N. Co.*, 39 Or. 256 (64 P. 453, 87 Am. St. Rep. 652) ; 20 C. J. 666, § 138; Lewis on Eminent Domain (3d Ed.) §§ 65 and 66; *Eaton v. Ry. Co.*, 51 N. H. 504 (12 Am. Rep. 147) ; *Stockdale v. Rio Grande Western Ry. Co.*, 28 Utah 201 (77 P. 849) ; *Knowles v. New Sweden Irr. Dis.*, 116 Idaho 217 (101 P. 81).

When the current or flow of a stream of water is obstructed or diverted from its natural course for a public use, so that it invades and totally destroys private property or materially decreases its value, it amounts to a taking within the meaning of the state and federal constitutions. *Theiler v. Tillamook County,* 75 Or. 214 (146 P. 828); *Pumpelly v. Green Bay Co.,* 13 Wall. 166 (20 L. Ed. 557); *United States v. Lynah,* 188 U. S. 445 (23 S. Ct. 349, 47 L. Ed. 539); *White v. Pennsylvania R. Co.,* 229 Pa. 480 (78 Atl. 1035, 38 L. R. A. (N. S.) 1040); *Conger v. Pierce County,* 116 Wash. 27 (198 P. 377, 18 A. L. R. 393); 1 Lewis on Eminent Domain, (3d Ed.) 86, § 78.

It is not necessary that the owner of property be actually dispossessed or that the property be completely destroyed in order to constitute a taking within the meaning of the constitutional provisions. *U. S. v. Cress,* 243 U. S. 316 (37 S. Ct. 380, 61 L. Ed. 746); *Miller v. Morristown,* 47 N. J. Eq. 62 (20 Atl. 61); *Barron v. Memphis,* 113 Tenn. 89 (80 S. W. 832, 106 Am. St. Rep. 810); *Great Northern Ry. Co. v. State,* 102 Wash. 348 (173 P. 40, L. R. A. 1918E, 987).

In an action of this character it is no defense that there was no specific intention on the part of defendant to appropriate plaintiff's property, but the defendant must be held to have intended to do those things which are the natural and ordinary consequences of his act. Doubtless the defendant county intended to construct the jetty. The natural consequence, of course, followed. *Miller v. Morristown,* supra; *Great Northern Ry. Co. v. State,* supra; *John Horstmann Co. v. U. S.,* 48 Court of Claims 423.

The provisions of the constitutions to the effect that private property shall not be taken for public use

without just compensation are self-executing and the injured individual has a remedy at law to recover the damages sustained apart from eminent domain proceedings. *Logan County v. Adler,* 69 Colo. 290 (194 P. 621, 20 A. L. R. 512, and note) ; *Gearin v. Marion County,* 110 Or. 390 (223 P. 929) ; *Theiler v. Tillamook County,* supra.

1 Lewis on Eminent Domain, (3d Ed.) 58, § 66, declares:

"The law as to what constitutes a taking has been undergoing radical changes in the last few years. Mr. Sedgwick, writing in 1857, in speaking of this subject, says : 'It seems to be settled that, to entitle the owner to protection under this clause, the property must be actually taken, in the physical sense of the word, and that the proprietor is not entitled to claim remuneration for indirect or consequential damage, no matter how serious or how clearly and unquestionably resulting from the exercise of the power of eminent domain.' The Supreme Court of Maine, in interpreting the constitutional provision in question, in 1852, said: 'The design appears to have been simply to declare, that private property shall not be changed to public property, or transferred from the owner to others, for public use, without just compensation.' These quotations present a fair statement of the condition of the law in the middle of the nineteenth century. * * * Numerous cases decided since Mr. Sedgwick wrote have vindicated his view of what the law should be."

In the federal constitution and those of the older states, we find the simple provision that private property shall not be taken for public use without just compensation. Later constitutions added the provision that the compensation must be paid before the taking, and in the newest states the constitutional provision is made to harmonize with the trend of judicial interpre-

tation by providing that property shall not be "taken or damaged" without first paying just compensation. *Conger v. Pierce County,* supra.

■ It is not seriously questioned, as we understand, but that if plaintiff's property was taken within the meaning of the constitution of Oregon, it was taken for a public use. The same section of the constitution, article I, section 18, provides that "use of all roads, ways and waterways * * * or water for beneficial use or drainage * * * is declared a public use." According to the allegations of the complaint, which we must take as true, in considering the demurrer, the object of making the change, and which resulted in the destruction of plaintiff's property, was for the purpose of benefiting the highway, of which the bridge was a part. The county had express statutory authority to appropriate land for the protection of roads, highways and bridges from overflow by floods or freshets, (§ 37-305, Oregon Code 1930) and section 37-307 of the code requires that compensation for property so taken shall be paid for from the funds of the county. It was perfectly proper for the county to protect its bridge and highway leading thereto by the construction of the jetty. Nevertheless it was required, both by the constitution and statute, that it pay the owner for any private property which was taken in the process, because that property was taken for a public use.

■ In accordance with modern authorities construing constitutional provisions similar to those of Oregon, any destruction or interruption of the common and necessary use and enjoyment of property constitutes a "taking" thereof. The decisions upon the question

are not harmonious, but the general rule deducible from them appears to be that there need not be an actual physical taking but that any destruction, restriction or interruption of the common and necessary use and enjoyment of property in a lawful manner may constitute a taking for which compensation must be made to the owner of the property, unless such acts can be referred to the exercise of some other governmental power, such as the police power, and even then the power must be exercised with due regard to the constitutional limitations, 20 C. J. 666, § 138.

We quote from 1 Lewis on Eminent Domain (3d Ed.) 56, § 65:

"* * * property may be taken, in the constitutional sense, though his title and possession remain undisturbed; and it may be laid down as a general proposition, based upon the nature of property itself, that, whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is, *pro tanto,* taken, and he is entitled to compensation. 'Any substantial interference with private property which destroys or lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed, is, in fact, and in law, a taking, in the constitutional sense, to the extent of the damages suffered, even though the title and possession of the owner remain undisturbed.' (Stockdale v. Rio Grande Western Ry. Co., 28 Utah 201, 211, 77 P. 849.)"

In *Eaton v. Ry. Co.,* supra, a leading case, the facts were that plaintiff was owner of a farm through which the defendant railway company had constructed a road. The farm was protected from the flood waters of a neighboring river by a ridge of land situated a short distance away. In the construction of the railway de-

fendant made a cut in the ridge of land through which, in times of freshet, the flood waters of the river flowed, carrying sand and gravel upon plaintiff's land, causing material injury. Plaintiff sued to recover damages for the injury to his property, relying on the constitutional provision that private property cannot be taken for public use without compensation. The opinion of the court is primarily devoted to the question of whether the facts constitute a "taking" of property within the meaning of the constitution. It was held in an exhaustive opinion to be a "taking" by the railway company. See *Pumpelly v. Green Bay Co.,* supra.

In *Theiler v. Tillamook County,* supra, the facts were as follows: Plaintiff owned a tract of land along one side of which defendant maintained a county road. The highway crossed a creek flowing from plaintiff's premises in a well-defined channel sufficient to carry off the water. Defendant constructed and maintained upon the highway a wall, a bridge and a culvert, whereby the ancient course of the creek was changed into a higher channel of less capacity and depth, causing the water of the stream at various times to flow over plaintiff's premises, destroying trees, shrubs and grass and washing away the soil, to his damage. Plaintiff relied upon the constitution of Oregon. In considering the demurrer to the complaint this court said:

"Though a purely municipal corporation does not ordinarily sustain to a person injured by its negligence the exact relation of a *quasi* public corporation, it is believed that the analogy is sufficient to render a county liable in damages for a trespass upon private property when such invasion practically amounts to a taking of any part of the premises without condemnation."

See *U. S. v. Cress,* supra; *Kerns v. Couch,* ante p. 147 (12 P. (2d) 1011, 17 P. (2d) 323).

It is the general rule, except where an exclusive remedy has been provided by statute, the owner of property, appropriated or injured for a public use without just compensation having been made, may maintain an action at law for the damages sustained thereby. 20 C. J. 1162.

When it becomes necessary to use private property for a public purpose, such as the improvement, construction or protection of a county highway, the statute provides a manner of obtaining such necessary property by the exercise of the right of eminent domain, if the same cannot be acquired by agreement. We think the law requires some due process of law before plaintiff's property could be taken by the county and that just compensation should be made therefor.

We recognize the rule, as asserted by counsel for defendant, that a county of the state of Oregon is not liable for ordinary torts or for the wrongful acts or omissions of its officers, servants or employees unless made so by statute or some constitutional provision. Section 5-502, Oregon Code 1930; *Gearin v. Marion County,* supra. But the present case, we think, plainly comes within the provisions of the constitution ordaining that private property shall not be taken for public use without just compensation and, therefore, the county is made liable. It is not within the province of the legislature to annul or restrict the constitution. *Gearin v. Marion County* was an action purely in tort. The language found on page 402 of the opinion plainly shows a distinction between that case, as well as others cited by defendant, and the one at bar. We quote from page 402:

"There was no allegation that plaintiff's land was caused to be flooded by the acts of the county or that any part of plaintiff's property was converted by the county, or that the county has received any benefit from the acts complained of. The acts done by the county were done without any intention to exercise the power of eminent domain or to take plaintiff's property or any part thereof for a public use, * * *."

Objection is made to the complaint that it is so general and uncertain that it cannot be ascertained therefrom in what manner the plaintiff's property was destroyed. We think the allegations of the complaint in the particulars mentioned sufficiently describe the manner in which the property was destroyed, so as to inform defendant what the plaintiff intended to prove and what defendant would be required to meet. There was no motion to make the complaint more definite and certain.

Defendant contends that the statute and decisions require a claim on a contract to be first presented to the county auditor and that the complaint fails to allege that plaintiff's claim was presented to the county auditor. However, there is an allegation that plaintiff's claim was presented and rejected. The action is not based upon a contract.

We think plaintiff's complaint states a cause of action. The judgment of the circuit court is therefore reversed and the cause is remanded for such further proceedings as may be deemed proper, not inconsistent herewith.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.