Argued August 22, affirmed September 23, reconsideration denied
October 9, petition for review denied November 26, 1974

DONAHUE, *Appellant, v.* BOWERS (No. 72-1552),
*Respondent.*

DONAHUE, *Appellant, v.* STEWARD (No. 72-1553),
*Respondent.*

526 P2d 616

*Terence J. Hammons,* Eugene, argued the cause for appellant. With him on the briefs were Hammons, Phillips & Jensen, Eugene.

*Robert E. Franz, Jr.,* Eugene, argued the cause for respondents. On the brief were Jaqua & Wheatley and John E. Jaqua, Eugene.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Plaintiff brought separate actions for damages against each of two defendants for allegedly interfering with plaintiff's employment at the University of Oregon in a classified position covered by the State Merit System Law (formerly called State Civil Service Law). Defendant Bowers was director of the department where plaintiff was employed. Defendant Steward was Personnel Director at the University.

In his complaint against defendant Bowers, plaintiff alleged that Bowers wilfully and without justification or cause, and with intent to injure and distress plaintiff, caused plaintiff to be discharged from his employment.

In his complaint against defendant Steward, plaintiff alleged that Steward with similar intent advised the "President's Budget Office" not to employ plaintiff for another position.

Defendants demurred to each complaint upon the ground that the complaint failed to state a cause of action. The lower court sustained defendants' demurrers and plaintiff appealed. On motion of plaintiff the two cases were consolidated for purposes of appeal.

Both cases present essentially the same question: Were defendants immune from personal liability for their actions under the facts alleged in plaintiff's complaint? Plaintiff argues that the doctrine of immunity of public officials from liability for discretionary acts performed within the scope of their authority was judicially created and should, for policy reasons, be limited in scope. When it was created, the concern of the Supreme Court was to protect officials from negligence claims, not claims for intentional tort such as are made by plaintiff in these actions.

Defendants on the other hand contend that the correct rule is that public officials and employes are absolutely immune from personal liability for official acts, whether their acts are based on negligent or intentional conduct.

Plaintiff did not allege nor does he now contend that defendants were acting outside the scope of their authority, or that their actions were not discretionary. Rather, plaintiff contends that the civil immunity doctrine does not apply when the acts of public officials or employes were motivated by ill will or malice.

■ The doctrine of civil immunity of public employes for actions involving the exercise of discretion is court made. *See, Spalding v. Vilas,* 161 US 483, 16 S Ct 631, 40 L Ed 780 (1896); *Smith v. Cooper,* 256 Or 485, 494, 475 P2d 78, 45 ALR3d 857 (1970). This doctrine is separate and distinct from the concept of

sovereign immunity now codified in ORS 30.260 to 30.300.

Turning to the Oregon cases dealing with the issue of civil immunity where the official was alleged to have acted maliciously, we find that in *Watts v. Gerking et al.*, 111 Or 641, 222 P 318, 228 P 135, 34 ALR 1489 (1924), plaintiff brought an action for malicious prosecution on a criminal charge against several defendants, one of whom was the district attorney. In sustaining the district attorney's demurrer the trial court held that the district attorney was not accountable to the plaintiff in an action for damages for acts done by him in his official capacity, regardless of the allegations in plaintiff's complaint that the district attorney's conduct was motivated by malice.

In *Shaw v. Moon et al.*, 117 Or 558, 245 P 318 (1926), another malicious prosecution action, an ex-officio justice of the peace issued a warrant to search the plaintiff's premises without affidavit, examination of witnesses or the taking of a deposition as required by statute. The court held that the justice of the peace was acting entirely without his jurisdiction and would be liable for injuries sustained,[1] but stated that the rule in Oregon is that the law does not subject either courts of limited or general jurisdiction to actions for damages while acting within their jurisdictions, even though the judicial act be erroneous, or not in good faith, or actuated by malice.

*Peterson v. Cleaver et al.*, 124 Or 547, 265 P 428 (1928), was a damage action which involved a search warrant allegedly procured by a state liquor prohibi-

---

[1] *Accord:* Utley v. City of Independence, 240 Or 384, 402 P2d 91 (1965).

tion commissioner maliciously and without probable cause. The court held that under the prohibition statute the commissioner was not empowered to exercise quasi-judicial functions as was the district attorney in *Watts v. Gerking et al.*, supra, and thus could not claim official immunity for his acts.

It would appear that *Peterson v. Cleaver et al.*, supra, turned on the fact that the court concluded that defendant Cleaver, an administrative official, was not exercising a quasi-judicial function at the time he procured the warrant, and therefore was not entitled to claim official immunity. If on the other hand *Peterson* is construed as standing for the proposition that an administrative officer if found to be acting maliciously is not entitled to claim official immunity, the effect of any such holding was weakened, if not destroyed, by the subsequent case of *Wright v. White*, 166 Or 136, 110 P2d 948, 135 ALR 1 (1941), which announced a contrary rule without referring to *Peterson v. Cleaver et al.*, supra.

In *Wright*, the plaintiff, who was a former warrant officer of the Oregon National Guard, brought an action for malicious prosecution against the State Adjutant General alleging that he maliciously and wantonly instigated false charges of criminal activity against plaintiff. In holding that the defendant was immune from liability our Supreme Court expressly recognized the holding of the United States Supreme Court in *Spalding v. Vilas*, supra, stating:

> "This principle of immunity has been extended to include the acts of ministerial officers: *Spalding v. Vilas*, 161 U.S. 483, 40 L.ed. 780, 16 S.Ct. 631, *Cooper v. O'Connor*, 99 Fed. (2d) 135, 118 A.L.R. 1440, (where, among others, agents of the Federal

Bureau of Investigation engaged in prosecution of violations of the banking laws were held to be protected) ; and to prosecuting attorneys, *Watts v. Gerking,* 111 Or. 641, 678, 222 P. 318, 228 P. 135, 34 A.L.R. 1489; 3 Restatement Torts, 392, § 656. It extends also, says Judge Cooley *(ibid.),* 'to military and naval officers in exercising their authority to order courts-martial for the trial of their inferiors, or in putting their inferiors under arrest preliminary to trial; and no inquiry into their motives in doing so can be suffered in a civil suit.' * * *." 166 Or at 144.

Our research has disclosed but one other case in which the appellate courts of this state have considered the effect of an allegation that the official was actuated by malice in the performance of the official action for which he was being sued: *Chemical Waste Stor. v. Day/ Mann,* 14 Or App 515, 513 P2d 1193, Sup Ct *review denied* (1973). In this case the plaintiff corporation brought an action for damages against the Director of the Department of Environmental Quality and the Director of the State Department of Agriculture. The plaintiff based its claim for recovery on the ground that the defendants "wickedly, wantonly and maliciously" issued an order requiring the plaintiff to stop transporting chemical residues. This court stated that the only two conditions that must be present in order for a public employe to be immune from suit in a case of this type are (1) the act of the public employe must have been discretionary and (2) the public employe must have had the authority to perform the act. We said:

"It is clear that defendant Day had the authority to issue the order without notice or hearing. The issuance of the order was a discretionary act. Under the rules set forth in *Smith v. Cooper,* supra [256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970)], defend-

ant Day is immune from suit on account thereof. * * *" 14 Or App at 525.

Thus the doctrine of official immunity which had previously been applied by our Supreme Court to judicial, quasi-judicial and military officers was in *Chemical Waste* extended to officers of the executive-administrative branch of state government.

What should be the rule as to employes of lower echelons of state government such as the defendants in the case at bar who exercise various discretionary functions?

On principle we think the rule should be the same, viz., absolute immunity if the employe is acting within the scope of his authority.

What if the defendants are alleged, as in the case at bar, to have maliciously interfered with plaintiff's employment?

Our attention has not been called to, nor have we been able to find, an Oregon case dealing with the doctrine of civil immunity for public employes involving a tort action for interference with an employment contract where both parties to the action are public employes.

Turning to the decisions on this point in other states, we find the following:

In *Gottschalck v. Shepperd*, 65 ND 544, 260 NW 573 (1935), a former professor of the State Agriculture College brought an action against the president and members of the board of administration of the college for maliciously and wrongfully discharging him. The court held that defendant officials, acting within their

jurisdiction in a discretionary manner, were not personally liable even if they had acted maliciously.

In *Hardy v. Vial,* 48 Cal2d 577, 311 P2d 494 (1957), the plaintiff was discharged from his employment as a professor as a result of charges made by the defendants. Defendants were the college's president, two of its deans and the head of the division in which plaintiff was employed. After reinstatement to his position by the state personnel board the plaintiff commenced a damage action against the defendants for wrongfully and maliciously procuring his dismissal. In holding that the defendants' acts were discretionary and within the scope of their authority, the court held that public employes are not personally liable where their discretionary acts were performed within the scope of their authority, even though it is alleged that their conduct is malicious and provoked by sinister motives.

Similarly in *Lipman v. Brisbane Elementary School District,* 55 Cal2d 224, 11 Cal Rptr 97, 359 P2d 465 (1961), the court reached the same conclusion. Plaintiff Lipman had been employed as a superintendent of a California school district. She brought an action against the county superintendent of schools for maliciously interfering with her employment contract alleging that such interference had caused her dismissal. In holding that the county superintendent was immune from suit the court stated:

> "The rule is settled, as pointed out above, that governmental officials are not personally liable for discretionary acts within the scope of their authority, and this rule applies not only to acts essential to the accomplishment of the main purposes for which the office was created but also to acts which,

although only incidental and collateral, serve to promote those purposes. * * *" 359 P2d at 469-70.

In his reply brief plaintiff lists cases from a number of jurisdictions which he contends support his position, namely, that a public official is not immune from suit if he acts in a wanton or malicious way, and with intent to injure.

Our examination of those decisions, however, discloses that in all but one (Iowa), the statement of the rule relied upon was by way of dictum only.[2]

The rule for which plaintiff contends is not without merit. It is true, as plaintiff earnestly argues, such a rule would tend to curb malicious official action. On the other hand, however, we believe that the adoption of such a rule would have an unacceptable adverse effect upon the vigorous performance by public officials of vital governmental functions requiring the exercise of discretion, and could conceivably clog the machinery of government with many vindictive and possibly ill-founded lawsuits against public officials and employes.

■ After reviewing all the cases cited by both sides, we conclude that the proper rule to be applied is that announced in *Chemical Waste*: A public officer or employe who is performing a discretionary function and is acting within the scope of his authority is immune from personal liability for his act, notwithstanding that such act was done, as alleged here, wilfully and without justification or cause and with intent to injure and distress the plaintiff.

---

[2] Although not listed in plaintiff's brief our research reveals that Michigan apparently follows the rule announced in the Iowa case, *Vander Linden v. Crews*, 205 NW2d 686 (Iowa 1973).

■ Finally, answering plaintiff's argument that this rule places public employes at the mercy of corrupt and malicious superiors, we point out that plaintiff was not without remedy if he was in fact wrongfully and maliciously discharged. The legislature has, in ORS 240.560, provided that a state employe who is dismissed has the right to appeal to the Public Employe Relations Board, an independent tribunal, for reinstatement without loss of pay. Further, ORS 240.560 provides for judicial review of the Board's orders.

Affirmed.